**UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
                          OAKLAND DIVISION**

RODERICK HERBERT,                                    No. C 06-05532 SBA

        Plaintiff,                              **ORDER**

  v.                                               [Docket No. 63]

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY and DOES 1-20, inclusive,

        Defendants.

---

      Before the Court is defendant State Farm Mutual Automobile Insurance Co.'s Motion for Summary Judgment or in the alternative, Motion for Summary Adjudication [Docket No. 63]. After reading and considering the papers presented, and the argument of counsel at the hearing hereon, held on February 5, 2008, the Court finds plaintiff Roderick Herbert made material representations regarding his criminal history, during State Farm's investigation of his claim for motorcycle theft, and thus GRANTS the motion.

## BACKGROUND[1]

      Herbert is a citizen and resident of California. Defendant State Farm is a corporation with its principal place of business in Illinois. The Court has diversity jurisdiction under 28 U.S.C. § 1332(a).[2]

**A.    Herbert's Motorcycle Insurance Policy**

      Herbert purchased an insurance policy from State Farm on or about February 5, 2002, for his 2002 Harley Davidson Road King motorcycle. *See* Decl. of Pl. Robert Herbert in Opp'n to Mot. for

---

[1] The parties presented many additional facts in their pleadings, beyond those discussed in this Order. The Court largely limits its analysis here to Herbert's criminal history, though it provides his vehicle loss history for context.

[2] Herbert filed in Alameda County Superior Court, alleging California common law actions, which were removed by State Farm. Def.'s Notice of Removal, Ex. "A," at 1 (Pl.'s Compl.) [Docket No. 1]. Thus California provides the substantive law in this matter. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Summ. J. or alternatively Mot. for Summ. Adjudication ("Herbert Decl."), ¶¶ 4-5 [Docket No. 71]. The policy covered theft-related losses. Def.'s Notice of Removal, Ex. "A," ¶ 6 (Pl.'s Compl.) [Docket No. 1]. It included a concealment or fraud clause, which read, "[t]here is no coverage under this policy if you or any other person insured under the policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy." *See* Decl. of Toni Forrester in Supp. of Mot. for Summ. J., or in the alternative, Mot. for Sum. Adjudication ("Forrester Decl."), Ex. "B, " ¶ 7 [Docket No. 66].

**B. Herbert's Insurance Claim**

On December 7, 2004, Herbert rode his motorcycle to work. Herbert Decl., ¶ 10. Then around 6:30 P.M., he rode it to the Le Cheval restaurant, in Oakland, for dinner, and parked in its parking lot. *Id.* After dinner, when he returned to the parking lot, his motorcycle was missing. *Id.*, ¶ 11. Herbert called the Oakland Police Department and filed a report. *Id.*; Decl. of David McDowell in Supp. of Mot. for Summ. J., or in the alternative, Mot. for Summ. Adjudication ("McDowell Decl."), Ex. "L" [Docket No. 67].

The next day, Herbert reported the theft to State Farm. *See* Forrester Decl., ¶ 7. The following day, State Farm sent him a letter acknowledging the claim and asking him to complete an Affidavit of Vehicle Theft (the "Affidavit"). *Id., ¶* 8. In the Affidavit, Herbert said the motorcycle was worth $44,000, as it was in "excellent" condition and had an imported seat, wheels, bags, and lights, all custom designed. *Id.*, Ex. "C"; McDowell Decl., Ex. "O" at 2. He had purchased it for about $23,000 in 2002. Herbert Decl., ¶ 4.

**C. State Farm's Investigation**

**1. Affidavit of Vehicle Theft**

On or about January 5, 2005, Herbert sent the Affidavit to State Farm. *See* Forrester Decl. at 2. The Affidavit, *inter alia*, posited the following two questions: (1) "Has Vehicle been damaged during the past three years?" Forrester Decl., Ex. "C" at 1. And, (2) "Any other claims in the last three years on this or any other vehicle?" *Id.* In response to both, Herbert checked the "no" boxes.

*Id.* State Farm referred the claim to its Special Investigation Unit ("SIU"). *Id.*, ¶ 10.

### 2. Claims Representative Forrester's Telephone Interview

On January 11, 2005, State Farm SIU Claim Representative Toni Forrester took Herbert's recorded statement over the telephone. *Id.*, ¶ 11. During the call, she asked Herbert if he had ever had a vehicle stolen before. He said a Navigator had been stolen several years ago, but had been recovered after being vandalized a little bit. *Id.*, Ex."D" at 5-6. She also asked Herbert if he had ever been charged or convicted of a misdemeanor or felony. *Id.* at 7. He said, "A long time ago." *Id.* at 7. Forrester followed up with, "As a juvenile?" and Herbert responded, "Yeah." *Id.* Understandably, Forrester did not pursue this topic.

### 3. Claim Representative Forrester's Claim Search

On or about January 19, 2005, Forrester completed a claim search regarding Herbert's auto theft history and found he had three prior theft claims. *See* Forrester Decl, ¶ 12. One for a Ford Escort, stolen in 1997, a Lexus, stolen in 2000, and a Lincoln Navigator, stolen in October 2002. *Id*.

Forrester then contacted Amex (American Express) Assurance, which insured the Navigator, and learned the claim was settled as an unrecovered total theft, and approximately $10,000 distributed to Herbert and $18,000 to the lienholder. *Id.*, ¶ 13; *See* Decl. of Robert S. McLay in Supp. of Mot. for Summ J., or alternatively, Mot. for Summ. Adjudication ("McLay Decl. "), Ex. "T" [Docket No. 69]. It was recovered in October 2002, and sold. McLay Decl., Ex. "T." Forrester contacted Allstate, which insured the Lexus and found the claim was settled as an unrecovered theft, though it was later recovered with minor damage and sold. Forrester Decl., ¶ 14; McLay Decl., Ex. "T." Allstate said it paid approximately $10,000 and $13,000 to Herbert and the lienholder, respectively. Forrester Decl., ¶ 14.

On January 21, 2005, Forrester sent Herbert a letter advising State Farm would verify his criminal record and the Navigator's loss history. *Id.*, Ex. "E." On January 31, 2005, Forrester had a non-recorded telephone conversation with Herbert, where he discussed the Navigator loss and a

second vehicle loss covered by Allstate. *Id*., Ex. "H." They also discussed an Alameda Superior Court criminal matter in which charges were dropped. *Id.*

### 4. Herbert's Oral Examination

#### a. Herbert's Criminal History

On May 4, 2005, David McDowell, Esq., State Farm's counsel, examined Herbert under oath. McDowell Decl., ¶ 11, Ex. "M" at cover. In February 2005, prior to the examination, State Farm obtained Herbert's criminal record and learned he had pled nolo contendre in 1997 to three counts of motor vehicle theft and eight other counts were dismissed. McDowell Decl., Ex. "O"; Forrester Decl., ¶ 20. The criminal complaint alleged Herbert, and others, were involved in a chop-shop operation. *Id.* Herbert received 16 months and did time in San Quentin. *Id.*

During the examination, McDowell asked Herbert if he had ever been arrested for a crime. McDowell Decl., Ex. "M," ¶ 43:26. Herbert said he had been arrested twice. *Id.*, ¶ 44. First, in 1992 or 1993, for drug possession, and he had pled, though he could not remember the exact plea, but he received house arrest. *Id*. at 44-46. He also said he did not know if the matter was still on his record. *Id*. at 45.

As for the second arrest, he was unsure, but believed it was in 1996 for "conspiracy or possession of stolen property." *Id*. at 47. He testified essentially he had been buying and selling cars, and when he tried to register one of them with the DMV, it turned out to have been stolen. *Id*. at 48. He identified the seller to authorities. *Id.* at 48-49. He could not remember his specific plea, but said he did ten months in jail, in 1997. *Id*. at 49-50. He said he was trying to get the conviction expunged. *Id*. at 50-51.

When McDowell noted discrepancies between his testimony that day, and his prior calls with Forrester, Herbert said there had been a miscommunication. McDowell Decl., Ex. "O," at 7.

#### b. Herbert's Vehicle Losses

During the examination, McDowell also asked Herbert about his vehicle history. *Id.*, Ex. "M" at 58. Herbert said he had owned several vehicles over the years, and three of them had

4

been stolen, in addition to the motorcycle. *Id*. at 63. He believed a Lexus had been stolen in either 1999 or 2000 and had been insured by either Farmers or Allstate. *Id*. at 64. He testified he did not recall whether he had received a settlement, though he thought it might have been paid off. *Id*. at 65. Herbert could not remember specifically when an Escort had been stolen, or the claim details. *Id*. at 65-66. When asked, he said he did not remember receiving a settlement. *Id.* at 66. Regarding the Navigator, he said he believed it had been stolen in the 2000s and it had been insured with American Express. *Id*. at 67. He also testified it had been was recovered, but he could not recover it due to a dispute with a towing company, but he believed he had received a settlement of $8,000 to 12,000. *Id.* at 68.

When asked why he did not identify these prior claims in his Affidavit, Herbert said he thought it had only asked about to his motorcycle claim, and he believed State Farm knew about his loss history, or the information it sought was beyond the time frame at which it was looking. *Id.*, Ex. "O" at 4, 8. When asked why he had only mentioned the Navigator theft during the recorded telephone conversation, Herbert said he and the claims adjuster were "in disagreements about the whole nature of this whole situation and I probably just didn't go all the way into detail." *Id.* at 6.

**D.     Claim Denial and Suit**

On June 20, 2005, McDowell recommended Sate Farm deny Herbert's claim, based on his and State Farm's investigation, the policy's concealment or fraud clause, and the California standard for rescinding policies in the face of false claims, set by *Cummings v. Fire Insurance Exchange*, 202 Cal.App.3d 1407 (1988). McDowell Decl., Ex. "O." McDowell prepared a lengthy and detailed 15-page analysis. *Id.* He concluded Herbert "has made numerous misstatements, including his criminal history, loss history, the sequence of events following the alleged loss, and his acquisition and installation of motorcycle parts." *Id.* at 13 para. 3. He further concluded, while individually, the allege misstatements might be insufficient to support denial, collectively, they were material as they pertained to "credibility, financial motive, facts of the loss and involvement in the subject loss." *Id.*, at 14 para. 4.

| | |
|---|---|
| 1 | State Farm denied Herbert's claim on June July 13, 2005, and notified him why by letter. |
| 2 | *See* Decl. of Laura Campbell-Bishop in Supp. of Mot. for Summ. J., or in the alternative, Mot. for |
| 3 | Sum. Adjudication, ¶ 12 [Docket No. 68]. The letter stated the discrepancies between Herbert's |
| 4 | various statements amounted to material misrepresentations. *Id.* Herbert then sued State Farm, on |
| 5 | July 13, 2006, in Alameda County Superior Court, alleging two causes of action, breach of contract |
| 6 | and breach of the implied covenant of good faith and fair dealing, and requesting compensatory and |
| 7 | punitive damages, interest, and attorneys' fees. Def.'s Notice of Removal, Ex. "A," at 1, (Pl.'s |
| 8 | Compl.) [Docket No. 1]. On September 11, 2006, State Farm removed the matter to this Court. |

## LEGAL STANDARD FOR SUMMARY JUDGEMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate there are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such a reasonable jury could return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect an action's outcome. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on their pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the Court views the evidence and draws inferences in the light most favorable to the non-movant. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004). Other legal standards are addressed below, as needed.

**ANALYSIS**

**A.  Summary judgement is warranted on Herbert's first claim for breach of contract.**

State Farm asserts it has no liability for Herbert's first claim because he allegedly violated his policy's concealment and fraud clause by making material misrepresentations.  A concealment or fraud clause generally voids an insurance policy, when an insured attempts to deceive an insurer. *Leasure v. MSI Ins. Co.*, 65 Cal.App.4th 244, 248 (2d.Dist 1998).  In California, in an insurance context, a misrepresentation, is a "false answer as to any matter of fact, material to the inquiry, knowingly and willfully made, with intent to deceive the insurer ...." *Cummings v. Farmers Ins. Exch.*, 202 Cal.App.3d 1407, 1416-17, 249 Cal.Rptr. 568 (1988) (quoting *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 95 (1884)).

In recommending denial, State Farm's counsel essentially noted seven categories of alleged discrepancies in the facts obtained from Herbert and third parties.  McDowell Decl., Ex. "O" at 10-13.  The Court need not address all seven, as one category of material misrepresentation suffices if sufficiently weighty, and as the following analysis shows, the Court finds Herbert's failure to disclose his criminal history, is adequate to end the Court's inquiry.

      **i.  Falsity**

The undisputed facts show Herbert pled nolo contest in 1997 to three counts of motor vehicle theft and eight other counts were dismissed, for which he received 16 months in prison.  On January 11, 2005, when State Farm asked him if he had any felony convictions, he led it to believe his criminal records consisted only of one or more juvenile adjudications.  He thus uttered a falsity.  His very belated and very inaccurate additional communications, on the phone and under oath, did not correct his initial falsity, and even if all his statements are viewed in the aggregate, they still do not convey a reasonably accurate picture of his prior criminal conduct.

      **ii.  Materiality**

The materiality of a statement is not defined and determined by the effect it has on the outcome of the investigation.  Rather, a question and answer are material when

they relate to the insured's duty to give to the insurer all the information he has as well as other sources of information so that the insurer can make a determination of its obligations. Thus, materiality is determined by its prospective reasonable relevance to the insurer's inquiry.

*Cummings*, 202 Cal.App.3d at 1416-17.

"[I]f the misrepresentation concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact misrepresented, then it is material." *Id.* at 1417. "[M]ateriality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not disagree on the materiality of the misrepresentations." *Id.*

Here, reasonable minds would agree an auto insurer would reasonably want to *inquire* as to a auto theft claimant's criminal history, as such information is clearly relevant for investigative or discovery purposes, as it could be admissible or lead to admissible evidence. *See* FED. R. CIV. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.") Here, Herbert's statements regarding his felony auto theft convictions, were directly relevant for investigative or discovery purposes, as they would have clearly lead State Farm to guide its investigation in directions it would otherwise not have gone, had it not believed he had such convictions.[3] In sum, Herbert's statements regarding his criminal history were material.

### iii. Knowingly and Willfully Made, with Intent to Deceive

"Generally, the issue of whether the insured's false statement was knowingly and intentionally made with knowledge of its falsity and with intent of defrauding the insurer is a question of fact." *Cummings*, 202 Cal.App.3d at 1417-18. In *Cummings*, an insured initially claimed her home, in which she lived alone, had been vandalized by parties unknown, while she was

---

[3]The Court, however, expresses no opinion as to the *admissibility* of such statements or their underlying facts, in trial.

out, and she repeated this in an oral examination. *Id.* at 1413 fn. 3. When confronted in the examination by a neighbor's account, placing her and her son, who lived with her, at home while he was damaging the property, she admitted they had argued over a utility bill, during which he became enraged, and drove her from the home at gun point. *Id.*

The *Cummings* court thus held the insured's knowledge, willfulness, and intent need not be tried:

> First, plaintiff admits that she knew she was lying to the defendant and did so with the intent that defendant not find out the actual facts. Second, under *Claflin*, the intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured wilfully makes it with knowledge of its falsity. Thus, plaintiff's intent to deceive was established as a matter of law.

*Cummings*, 202 Cal.App.3d at 1417-18.

Likewise, in *Woods v. Independent Ins. Co.*, 749 F.2d 1493 (11th Cir. 1985) the defendant conveyed his insured home in fee simple to his mother, to avoid losing it in divorce, but then claimed it was his when it burned down. *Id.* at 1494-95. He later conceded the knew the representation was false, and the court affirmed summary judgment against him. *Id.* at 1496-97.

And, in *Long v. Insurance Co. of N. Am.*, 670 F.2d 930 (10th Cir. 1982), a witness saw homeowners remove their furniture from their home, put in older furniture, then saw one of their relatives exit the home, shortly before it caught fire. *Id.* at 931. The homeowners had moved their real furniture to a storage facility, but denied under oath they had any such facility. *Id.* at 931-32. The court found their denials material misrepresentations, as a matter of law. *Id.* at 933-34.

In this case, Herbert clearly knew he was lying, and willfully did so, in January 2005, when he failed to disclose to State Farm his felony conviction and prison stay, for three counts of auto theft. No reasonable jury would believe that a mere eight years after conviction, and presumably only seven after imprisonment, and even less after probation,[4] that he forgot his period of

---

[4]The evidence presented does not indicate Herbert's probation term.

imprisonment. Nor does Herbert explain how he meant the term "Juvenile," in his recorded interview, to account for his adult narcotics conviction. In addition, Herbert did little to correct these falsehoods in his second phone interview or in his oral examination. Thus, as in *Cummings* and the related cases just discussed, no reasonable jury would have difficulty concluding Herbert knew he was lying to State Farm and did so with the intent it not find out the actual facts. As a result, Herbert's intent to deceive is established as a matter of law.

### iv. Conclusion

Viewing the evidence and drawing inferences in a light most favorable to Herbert, there are no genuine issues of material fact which prevent the Court from finding as a matter of law in failing to disclose his felony auto theft conviction and his prison term, he gave a false answer to a matter of fact, material to State Farm's inquiry, knowingly and willfully made, with the intent to deceive State Farm. Therefore, the Court grants State Farm's motion for summary judgment with regards to Herbert's first claim for breach of contract.

## B. Summary adjudication is warranted on Herbert's second claim for breach of the implied covenant of good faith and fair dealing.

Summary adjudication is appropriate here, where viewing all the evidence and drawing all inferences in a light most favorable to Herbert, there is no genuine issue of fact as to: (1) whether or not State Farm investigated Herbert's claim reasonably and in good faith, which it did; and (2) whether, under the facts and circumstances of this matter, State Farm has a genuine dispute with him regarding its liability, which it does.

> In addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a covenant of good faith and fair dealing. The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes.

10

*Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818, 169 Cal.Rptr. 691 (1979) (citations omitted).

"The implied covenant of good faith and fair dealing does not impute an obligation on the insurer to pay every claim made by its insured." *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 721 (2007). But when "the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." *Id.* at 720 (quoting *Frommoethelydo v. Fire Ins. Exch.* 42 Cal.3d 208, 214-215, 228 Cal.Rptr. 160, 721 P.2d 41 (1986)). To avoid this, an insurer must fully investigate a claim's grounds for denial and approval. *Wilson*, 42 Cal.4th at 721. Likewise, an insurer must not deny a claim on grounds unfounded or contradicted by known facts. *Id.*

"[T]he critical issue [is] the reasonableness of the insurer's conduct under the facts of the particular case.... An insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions." *Wilson*, 42 Cal.4th at 723. Under the "genuine dispute" rule:

> [A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.

*Id.* at 723 (quoting *Chateau Chamberay Homeowners Assn. v. Associated Int'l. Ins. Co.*, 90 Cal.App.4th 335, 347, 108 Cal.Rptr.2d 776 (2001)).

> The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable-for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. [Citation.] ... On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

*Wilson*, 42 Cal.4th at 724 (quoting *Amadeo v. Principal Mut. Life Ins. Co.* (9th Cir. 2002) 290 F.3d

1152, 1161-1162).

In this case, it is clear, as a matter of law, State Farm did not breach the implied covenant of good faith and fair dealing. There is nothing in State Farm's conduct which suggests its investigation was unreasonable or performed in bad faith. State Farm looked into the facts surrounding Herbert's claim, his loss history, his criminal background, and the motorcycle's value. The latter investigation covered Herbert's appraisals, his work done on the vehicle, and his alleged customized equipment.[5] As discussed in analyzing Herbert's first claim for breach of contract, all of these subjects are material to a claims investigation.

Procedurally, it is also clear as a matter of law that State Farm behaved reasonably and in good faith in conducting its investigation. It used the Affidavit, telephone interviews, and an oral examination under oath, and third-party statements and documents to verify Herbert's statements. And, State Farm took pains to advise him as to what it was doing and with whom it was communicating. While Herbert might complain State Farm was investigating him, rather than his claim, Herbert Decl. ¶ 16, State Farm was as much ruling him out, as ruling him in.

Also, Herbert was slow to respond to inquiries, and often gave inconsistent or partial answers, which created contradictions or raised questions into which State Farm had a right to follow up. In addition, based on all the inconsistencies State Farm found, it was reasonable for them to conclude Herbert had defrauded State Farm.[6] Thus, this is not a case where State Farm failed to

---

[5] In particular, Herbert provided a box of receipts, which State Farm sent to an appraiser for evaluation. Forrester Decl. ¶ 16, Exs. "E," "H"-"I," "K"; McDowell Decl., Ex. "O" at 3. State Farm also contacted some of the entities indicated in the receipts to verify whether the work indicated had been done. McDowell Decl., Ex. "M" at 218-21, 247-48, "O" at 4-5; McLay Decl., Ex. "U." Also, although Herbert claimed to have had the motorcycle appraised twice, Forrester Decl ¶ 16; McDowell Decl., Ex. "O" at 7, he never produced any written appraisals, nor provided contact information for the appraisers. State Farm also requested cell phone records and his Le Cheval receipt. Forrester Decl. Exs. "E," "H"-"I." Herbert refused to produce the former, on the grounds State Farm wanted them for multiple days before and after the date of loss, Herbert Decl. ¶ 17, and he never produced the latter, McDowell Decl., Ex. "O" at 20 ¶ 5.

[6] This is not to suggest the evidence supports finding Herbert *defrauded* State Farm, *as a matter of law*. Both Herbert and State Farm could reasonably dispute his denial, without either violating the implied covenant of good faith and fair dealing, even if State Farm were in breach of contract. *See Wilson* 42 Cal.4th at 723.

follow up on a reasonable lead or ignored contradictory evidence. *See Frommoethelydo*, 42 Cal.App.3d at 212-14, 220 (insurer's denial unreasonable where insured claimed loss of similar sets of audio-visual equipment twice, due to two burglaries, and insurer failed to interview known witness who had seen equipment in the insured's home, between burglaries).

In addition, State Farm consulted with legal counsel, not only to conduct the oral examination, but to rigorously analyze the evidence discovered, under the pertinent California legal standards, to reasonably dispose of his claim. The use of counsel tends to support State Farm acted in good faith. *See State Farm Mut. Auto. Ins. Co. v. Superior Ct.*, 228 Cal.App.3d 721, 725, 279 Cal.Rptr. 116 (1991).

Thus, under the undisputed facts and circumstances of this matter, viewed with all inferences drawn in a light most favorable to Herbert, State Farm has a genuine dispute with him regarding its liability, and any reasonable jury would find it investigated Herbert's claim reasonably and in good faith. Thus, summary adjudication is appropriate on Herbert's second claim for breach of the implied covenant of good faith and fair dealing.

**C.    Summary adjudication is appropriate on Herbert's claim for punitive damages.**

Because State Farm is entitled to summary adjudication on Herbert's second claim for breach of the covenant of good faith and fair dealing, it is also entitled to summary adjudication on Herbert's claim for punitive damages. Under California law:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ. Code § 3294(c).

> Evidence that an insurer has violated its duty of good faith and fair dealing does not thereby establish that it has acted with the requisite malice, oppression or fraud to justify an award of punitive damages. In order to establish that an insurer's

13

conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by *clear and convincing evidence* that the insurer has acted maliciously, oppressively or fraudulently.

*Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal.App.4th 306, 327, 5 Cal.Rptr.2d 594 (1992) (citations omitted) (emphasis in original).

In this case, as already discussed, State Farm is entitled to summary adjudication on Herbert's second claim for breach of the covenant of good faith and fair dealing. Thus, as this is Herbert's only claim which might allow for punitive damages, State Farm, as a matter of law, under *Mock*'s analysis, could not have engaged in malicious, oppressive, or fraudulent conduct. Therefore, State Farm is entitled to summary adjudication on Herbert's claim for punitive damages.

## CONCLUSION

The Court GRANTS State Farm's Motion for Summary Judgment or in the alternative, Motion for Summary Adjudication [Docket No. 63].

IT IS SO ORDERED.

February 14, 2008

Saundra Brown Armstrong
United States District Judge

14